Caruthers, J.,
delivered the opinion of the Court. '
On the 4th of July 1838, Pryor Crittenden sold to Thomas Posey two slaves, Martha and Eveline, for $566.50, and made him a bill of sale in the ordinary form. These, with the child of Martha named Sam, are the objects of this suit. The vendor is dead, and his widow, the complainant, claims the slaves as tenant in remainder, under the laws of Virginia.
*318 John Jackson died intestate, in Virginia, about the beginning of the present century, leaving a widow, Francis Jackson, and the complainant, his only child, who married Pryor Crittenden. They came to this State and settled in Wilson county, about 1831 or 1832. By a proceeding in the Court of Nottoway county, Virginia, in 1803, there was assigned to the widow, among others, as her dower in the slaves, a negro woman named Bridget. The slaves in controversy are her issue. It seems that Crittenden mortgaged the remainder interest of his wife in these slaves to Worsham, in 1830, by whom they were bought under a decree for sale there, and afterwards, perhaps in 1835 or 6, redeemed, and the life estate of the widow purchased, and the slaves brought to this State by Crittenden; and the two in question .sold to Posey at the time stated, 1838. It appears that the complainant objected to the sale at the time it was made, insisting upon her right at the death of her mother, which did not occur until after the filing of this bill, when an amended bill was filed. The original bill was filed in November, 1854, the said Pryor having died the year before.
1. By the law of Virginia the life estate is forfeited if the slaves are removed from the State without or against the consent of those entitled in reversion. But this case presents no difficulty on that ground as they were removed by the husband, and his consent would be that of his wife in this respect, and save the forfeiture. Foster v. Jordan, 2 Swan, 476. So her right, whatever it was, would not be affected by the removal, nor would the life estate be forfeited, but inure to the husband as purchaser; and at the termination of *319 that by the death of the widow Jackson, the complainant’s right to assert her title in reversion would accrue, unless something else has occurred to defeat it.
2. This, it is insisted is the case, by the sale of the slaves by the husband. And whether that can be done by the husband, so as to bind the wife, is the next question. It certainly cannot by the laws of this State, so as to exclude her right, if she survives her husband, as was decided in the case of Ann Sullivan v. Samuel Caplinger, 2 Hum., 548. In that ease, as in this, the husband, had purchased in the life estate, and sold the whole to Caplinger. But it is contended that the law of Virginia is different, and that such. a sale there would bind her rights. This becomes an important question in the case, because of the sale under the trust deed there, and perhaps the sale to Posey here. This question seems to have been the subject of some conflict of decision, or at least of judicial and professional opinion in Virginia. The whole subject is presented in the text and notes, 1 Lomax on Ex., 312. His conclusion as to the Virginia decisions, conforms to the law as settled in this State, and refers to the same authorities relied upon in Sullivan v. Caplinger. His conclusion is, that no assignment by the husband of his “wife’s reversionary choses in action,” and this is held by cases cited in the note to include reversionary interests in slaves, “ though it be vested, and though the assignment be for a valuable consideration, will defeat her right of survi-vorship, if he die in her lifetime, and while such interest is reversionary.” If the life estate had fallen in while the husband lived, his right to reduce the rever-sionary interest to possession, would inure to his assignee *320 and defeat tbe wife’s right by survivorship. But that is not this case. The purchase of the 'life estate does not help or strengthen the husband’s right to the reversion. The two estates were as distinct as before. The husband could not, by that or any other mode, obtain power over that while it was reversionary. In this respect, there is no distinction between the laws of Virginia and Tennessee.
There is no such affirmative fraud on the part of the wife, by inducing the purchase by Posey, as to preclude her from the assertion of her right. The proof that she said a few days before the sale, under excitement, that these slaves should be sold, does not connect itself with this sale, as the testimony is clear by Col. Price and others, that she opposed it at the time it was made. We conclude that there is no legal obstacle in the way of her right to a decree for these slaves, as held by the Chancellor.
3. The next question is upon the measure of damages to be recovered by Posey from the estate of his vendor, on account of the breach of warranty of title. Whether this should be the purchase money and interest, or the value of the slaves at the time of recovery. The Chancellor allowed the latter, amounting to $2200, and charged $250 for the hire since the termination of the life estate by the death of Mrs. Jackson, in 1856.
In relation to land, this question has perplexed the Courts of the different States, but has been most generally settled as in Tennessee, that the true rule is, upon failure of title, that the measure of damages upon covenant of warranty, is the consideration and interest. 4 Hum., 101; 8 Hum., 653. In a suit upon covenants to *321 convey the value of the land at the time it should have been conveyed, is the rule. But when the subject is slaves, or other personal property, we are not aware that any rule has been settled in this State, in' any adjudicated case.
It would seem to be most convenient in practice to make the rule the same in breaches of warranty of title to slaves, as for land, on account of uniformity. In Rowland v. Shelton, 25 Alabama Rep., 220, it was so held. So, in South Carolina, in 2 McMullin’s Rep., 109, and previously in Nott & McCord, 198. In that case it is said such is the common law rule, 199. We can see no sufficient reason for a distinction as to the measure of damages in the two kinds of property. Either rule-would work hard in some cases. If the value at the time of recovery under a better title be adopted as the-rule, it would work unjustly upon the purchaser in a-case where the property had fallen one-half from the-time of his purchase, or where the value had been much reduced by age or disease. And, it would be hard upon a bona fide vendor to be bound to pay five times the amount received by him, in consequence of a great increase in number or value at the time of the successful' assertion- of the superior title';
On the other hand, if the rule be, that the price paid with interest, be the measure, that will likewise be productive of hard cases in some instances. Upon the vendor, when the slaves by depreciation from change of times or other causes, at the time they are lost, are not worth half so much, and still he would have to-pay the full amount received; and upon the vendee, in case of great enhancement of value, as in the present* *322 case. The same reasons, with nearly, if not quite equal force, exist, and bare been urged, upon the same question in relation to land. In some instances, in both cases, either rule works with apparent, if not real injustice, but in general, it is, perhaps, the most just and equitable that can he adopted. Yet some fixed rule must exist, notwithstanding the variety in the results of its operation in the different cases to which it may apply in practice. These difficulties were felt in relation to real estate, and the books. are full of conflicting reasoning, as well as decisions on that subject. The result has been, that each State has settled the rule as best comported with the views of their respective tribunals. And perhaps it has generally been made uniform in its application to real and personal property in the same State. And as our Courts have adopted the principle in application to land, that the price paid with interest, shall be the measure of damages, we think it most fit and proper, that the same rule should govern in actions upon covenants for the failure of title to slaves. How far the existence of fraud on either side would affect the question, we need not- now consider, as we think it did not exist in this case, but that the vendor thought he was selling, and the vendee considered that he was buying a good title.
We hold, then, that the measure of damages upon covenants of warranty for failure of title to slaves, is the consideration money paid and interest, as in the case of land. But in a case where the title was good for_ a certain period, as in this case for the life of Mrs. Jackson, interest should not be counted until the termination of the life estate, by her death, in 1856. *323 Before that time, no hire can be charged, and it would be inequitable to allow interest.’ ' Since that event, the title failed, and the right to hire on the one side, as well as interest on the other, accrues. Some cases are to be found, in' which the consideration paid originally, was reduced in the proportion of the value of the life estate, for which the title was good, to the absolute estate, to which the warranty extended. But we are not prepared to adopt that principle, and allow the full consideration paid, as aforesaid.
The decree will be reversed, as to the rule of damages, and the decree for Posey, upon his cross-bill, will be only for his purchase money and interest from the death of the tenant for life; and the decree against him, will be - for the slaves and the hire up to the time they are delivered to the complainant. The cost will be equally divided.